UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

James Jiggetts,

       -v-

United Parcel Service et al.,

       Defendants.

14-cv-8291 (AJN)

MEMORANDUM & ORDER

ALISON J. NATHAN, District Judge:

    Before the Court are two motions to dismiss pro se Plaintiff James Jiggetts's Second Amended Complaint, filed by Defendant Mohanie Sukhu, *see* Dkt. No. 37; Dkt. No. 38 (hereafter "Sukhu MTD"), and Defendants United Parcel Service ("UPS"), John Mannion, and Doug Trandiak (collectively, the "UPS Defendants"), *see* Dkt. No. 39; *see also* Dkt. No. 41 (hereafter "UPS MTD"). For the reasons that follow, the motions to dismiss are GRANTED.

## I.   Procedural History and Background

### A.  Relevant Procedural History

    On October 10, 2014, pro se Plaintiff James Jiggetts filed a Complaint against some, but not all, of the Defendants in this action, alleging, with almost no factual specificity, violations of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*, the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, the New York State Labor Laws, N.Y. Lab. Law §§ 650, *et seq.*, and the Contracts Clause of the United States Constitution, Art. I, § 10, Cl. 1. *See* Dkt. No. 1. On January 6, 2015, Chief Judge Preska dismissed that Complaint *sua sponte*, on the ground that the "allegations [were] so

1

unclear and without factual detail that the Court [could not] discern whether Plaintiff ha[d] stated a plausible claim for relief," and that the Court could not "understand what Plaintiff's federal claims [were]." Dkt. No. 4 at 3. Thereafter, the Plaintiff, with leave of the Court, filed his First Amended Complaint. *See* Dkt. No. 5. The Defendants moved to dismiss that complaint on the grounds that it was indecipherable and that the Plaintiff had not provided a right to sue letter from the EEOC. *See* Dkt. No. 19. The Plaintiff thereafter filed what he denoted an opposition to the Defendants' motion, *see* Dkt. No. 27, but which the Court construed as a Second Amended Complaint, Dkt. No. 28. On March 23, 2016, the Court administratively denied the pending motion to dismiss and deemed the Second Amended Complaint the operative complaint in this case. *See id.*; *see also* Dkt. No. 27 (hereafter "Amended Complaint" or "Am. Compl."). Sukhu moved to dismiss the Amended Complaint on April 20, 2016, Dkt. No. 37, and the UPS Defendants moved to dismiss on April 25, 2016, Dkt. No. 39.

**B. The Amended Complaint**

In his Amended Complaint, the Plaintiff cites a number of federal statutes, pursuant to which he purports to bring claims. He cites the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*; the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.*; the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*; 42 U.S.C. § 1983; the Older Workers Benefit Protection Act ("OWBPA"), 29 U.S.C. § 626(f); and the Age Discrimination in Employment Act ("ADEA"), 42 U.S.C. § 621, *et seq. See* Am. Compl. at 6-8. The Plaintiff also makes several ambiguous references to additional legal regimes. *See* Am. Compl. at 3 (citing to "the C.F.R. 48, Chapter 54, Subchapter 8b on the right of the employee regarding

whistleblower rights"); *id.* at 6 (noting that Plaintiff's "NYS Civil Rights Laws of Article 4-7, Sects.74-77 have been called into question . . . along with [his] NYS, Labor Rights-260-j").

The text of the Amended Complaint itself is largely devoid of factual allegations in support of these claims. Jiggetts, however, also attaches to the Amended Complaint a letter he purportedly sent to the Equal Employment Opportunity Commission ("EEOC") on June 12, 2014, in connection with a pending charge. *See* Am. Compl. at 26-35; *see also Leonard F. v. Israel Discount Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (stating that courts may consider facts in documents appended to the complaint in deciding a motion to dismiss). Plaintiff does not identify the date that he made that charge to the EEOC, or allege anywhere in his Amended Complaint which specific allegations or claims he made to the EEOC. *See generally* Am. Compl. He has provided, however, a right to sue letter arising out of the otherwise unidentified charge. *See* Dkt. No. 42, Ex. O.[1]

In the letter, Plaintiff alleges that he worked for UPS for 26 years prior to his termination. *See* Am. Compl. 26. He claims that, over those 26 years, white male employees were promoted over him, often despite lacking the requisite qualifications for the positions or otherwise having violated company policies, and that his complaints about such treatment were either ignored or met with hostility. *See id.* at 26-30. He also alleges that he was an insulin-dependent diabetic, but that, at various points over a span

---

[1] The UPS Defendants aver in their motion to dismiss that they sought a copy of the Plaintiff's EEOC Charge from the EEOC itself pursuant to the Freedom of Information Act, but were told by the EEOC, on April 12, 2015, that: "At this time we are unable to grant your request, because the records you seek, we are unable to locate. We have no choice after a thorough search but to consider this file lost. The EEOC will continue to look for the information requested and if found will provide you with the information." Dkt. No. 41 at 5.

3

of 10 years, managers at UPS forced him to work night shifts, which he was unable to do without compromising his health, at times in retaliation for complaints he made of racial discrimination. *See id.* at 27-30. Plaintiff claims that at least one white, Irish male co-worker received "special provisions" for his diabetes, but that the same was not offered to Plaintiff. *Id.* at 27.

In 2011, Plaintiff alleges that his manager at the time, a white male who Plaintiff claims had previously been terminated for a violent altercation in the workplace, called Plaintiff a derogatory racial name. *Id.* at 28-29. When Plaintiff complained of the incident to management, he alleges that he was told that the manager denied making any inappropriate statement. *Id.* Shortly after this meeting, Plaintiff was not given a raise for the first time in his 24 years at UPS, as a result of a bad performance review he received from the manager in question. *Id.* at 29. Plaintiff thereafter filed a charge with the EEOC – an earlier charge from that preceding the present lawsuit. *Id.* at 29.[2]

At some point thereafter, Plaintiff began to work under Kathy Bresnahan, a white woman. *Id.* at 29. Plaintiff alleges that under Bresnahan's tenure, Plaintiff was again forced to work the night shift, although he alleges that Jim Fitzgerald, the head of the Department where Plaintiff worked, was aware that Plaintiff was an insulin-dependent diabetic and "that the A.D.A. said [he] could not work nights." *Id.* at 30. Plaintiff does

---

[2] Plaintiff filed this charge on January 23, 2013. In that charge, he explicitly brought claims based on Title VII on the basis, *inter alia*, of the alleged discrimination and retaliation described above. *See* Dkt. No. 42, Ex. L. The Court may take judicial notice of this charge, and it is, in any case, referenced in the June 2014 letter. *See* Am. Compl. at 33; *see also Clarke v. White Plains Hosp.*, No. 13-CV-5359 (CS), 2015 WL 13022510, at *3 (S.D.N.Y. Apr. 22, 2015), *aff'd*, 650 F. App'x 73 (2d Cir. 2016) (summary order) (noting that a court may take judicial notice of EEOC charges); *accord Jenkins v. St. Luke's-Roosevelt Hosp. Ctr.*, No. 09 CIV. 12 (RMB) (MHD), 2009 WL 3682458, at *5 (S.D.N.Y. Oct. 29, 2009). The EEOC issued a right-to-sue letter relating to that charge on May 16, 2013, but no timely lawsuit was brought. Dkt. No. 42, Ex. N.

4

not specify precisely when this event occurred, or whether he complained of the treatment (as he had previously done). *Id.*

After working for Bresnahan, Plaintiff was assigned (at an unspecified date) to work for John Mannion, a white Irish male who supervised Plaintiff in the Loss Prevention and Security Department. *Id.* at 27, 30. Plaintiff claims that Mannion was promoted over several people who were not white males in loss prevention, though Plaintiff alleges that these people had been in the department longer and "yielded very good results." *Id.* at 27. Plaintiff also alleges that Mannion had previously quit UPS to seek an outside opportunity, but that Mannion had been rehired, despite a custom of not hiring such individuals back, and ultimately given a supervisory position over non-white employees. *Id.* In August 2013, Mannion informed Plaintiff that he was not getting a raise, and that Mannion was "not recommending [Plaintiff] to get [his] stock." *Id.* at 30.

In August 2013, Plaintiff alleges that he was falsely accused of sexual assault by a security guard, Mohanie Sukhu, who worked for a company called "Adelis Security." *Id.* at 30. After the accusation, Plaintiff alleges that Mannion and Doug Trandiak, UPS's human resources manager, put Plaintiff on a leave of absence status, without his permission, resulting in his losing medical benefits for 30 days. *Id.* at 32. Plaintiff spoke to human resources and Mr. Trandiak, neither of whom restored his benefits. *Id.* In a meeting that took place on September 13 of either 2013 or 2014,[3] Mannion, and Trandiak informed Plaintiff he was being terminated "for violation of [UPS's] Anti-Harassment

---

[3] The Plaintiff lists this date as 2014 in his EEOC letter. *See id.* at 32. However, the letter itself is dated June 12, 2014 (months prior to September 2014), and the Plaintiff alleges that this conversation occurred only weeks after his interactions with Sukhu – which he alleges occurred in August 2013. *See id.* at 30-32.

5

Policy." *Id.* After he was terminated, Plaintiff sought relief through the Employee Dispute Resolution process, but UPS "den[ied him] the chance to go to Arbitration," the final step of that process. *Id.* at 32-33.

In his letter to the EEOC, Plaintiff asserts that the choice to terminate him was motivated by discriminatory animus, on the basis of Plaintiff's race, and retaliatory animus, on the basis of his complaints about racial discrimination. *Id.* at 33-34. He alleges that Trandiak and Mannion used Sukhu's complaint as pretense to fire the Plaintiff. *Id.* at 34-35. Plaintiff also alleges that, as result of his termination, he will not be able to collect his pension until the age of 62, whereas he would otherwise have been eligible to collect his pension at the age of 55. *Id.* at 34. Plaintiff notes that, by firing him, UPS "save[d] on paying [his] pension and benefits for 10 years." *Id.* Plaintiff also alleges that, because of his termination, he had to pay $500 monthly premiums for "COBRA [Consolidated Omnibus Budget Reconciliation Act] coverage," and that "[UPS] cashed some of the checks that [he] sent in and some they did not cash," resulting in the termination of Plaintiff's benefit coverage. *Id.* at 33.

## II.    Discussion

### A. Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The "plausibility standard is not akin to a 'probability

6

requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* If a complaint "pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

A court evaluating a motion under Rule 12(b)(6) must "accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor." *LaFaro v. N. Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009) (internal quotation marks omitted). The Court is not, however, "bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). The Court may "consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference . . . and documents possessed by or known to the plaintiff and upon which [he] relied in bringing the suit." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

When assessing Jiggett's pleadings in this case, the Court is further mindful that "the submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (emphasis omitted) (internal quotation marks omitted). Nevertheless, if a pro se plaintiff makes allegations that are "so confused, ambiguous, vague, or otherwise unintelligible that [their] true substance, if any, is well disguised," dismissal of any claims such allegations purport to raise is appropriate. *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995); *see also Trice v. Onondaga Cty. Just. Ctr.*, 124 F.

7

App'x 693, 694 (2d Cir. 2005) (summary order) (affirming dismissal of a pro se complaint as unintelligible).

Finally, when a complaint is vague or lacks detail, a district court "may treat a motion to dismiss as a motion for a more definite statement." *Baptista v. Hartford Bd. of Educ.*, 427 F. App'x 39, 43 (2d Cir. 2011) (summary order); *see also id.* ("[R]equiring a limited expansion of a complaint . . . under Rule 12(e) . . . is a matter generally left to the district court's discretion." (quoting *Hodgson v. Va. Baptist Hosp., Inc.*, 482 F.2d 821, 824 (4th Cir. 1973)). In such a circumstance, the Court may grant the plaintiff – especially a pro se plaintiff – leave to amend to cure any vagueness or ambiguity. *See Baptista*, 427 F. App'x at 3 (noting that the district court repeatedly granted the pro se plaintiff leave to amend); *but see id.* ("A litigant's repeated failure to provide that more definite statement can itself warrant dismissal.").

### B. Analysis

As noted, in the Amended Complaint, the Plaintiff explicitly cites to a number of federal statutes, pursuant to which he purports to bring claims. These include the FLSA; the ERISA; the ADA; 42 U.S.C. § 1983; the OWBPA; and the ADEA. *See* Am. Compl. at 6-8. The Plaintiff also makes several ambiguous references to additional legal regimes. *See* Am. Compl. at 3 (citing to "the C.F.R. 48, Chapter 54, Subchapter 8b on the right of the employee regarding whistleblower rights"); *id.* at 6 (noting that Plaintiff's "NYS Civil Rights Laws of Article 4-7, Sects.74-77 have been called into question . . . along with [his] NYS, Labor Rights-260-j"). The UPS Defendants argue, and the Court agrees, that these ambiguous statements are so unintelligible that they must be dismissed for failure to state claims. *See* UPS MTD at 5 n.4; *Simmons*, 49 F.3d at 86; *Trice*, 124 F.

8

App'x at 694. Finally, although the Plaintiff does not reference other statutory regimes, it is possible, based on allegations in his attached EEOC letter, that he intends to bring additional claims based on discrimination or retaliation on the basis of his race.[4]

For the reasons that follow, the Court finds that the Amended Complaint fails to state a claim against any of the Defendants.

### 1. Defendant Sukhu's Motion to Dismiss

The Court first addresses Defendant Sukhu's motion to dismiss.

As an initial matter, Ms. Sukhu argues that the Plaintiff's Amended Complaint in this action should be dismissed on the basis of collateral estoppel, as the Plaintiff previously filed a lawsuit predicated on similar facts against Sukhu in the Southern District of New York, and that lawsuit was dismissed. *See* Sukhu MTD at 4-6 (citing *Jiggetts v. New York Daily News et al.*, 14-cv-7674 (LAP) (S.D.N.Y. Nov. 4, 2014) (Docket No. 4)). The Court need not decide whether that decision estops any of Plaintiff's claims in this action, as, even assuming it does not, the Amended Complaint fails to state a claim against Ms. Sukhu under any of the federal statutes Plaintiff cites.

As to the FLSA, Ms. Sukhu is not alleged to have been Plaintiff's employer as that term is defined under the Act. *See Irizarry v. Catsimatidis*, 722 F.3d 99, 103-06 (2d Cir. 2013). As to the ERISA claim, the Plaintiff has not alleged facts providing for individual liability against Ms. Sukhu. *See Metal Lathers Local 46 Pension Fund v. River Ave. Contracting Corp.*, 954 F. Supp. 2d 250, 261 (S.D.N.Y. 2013) ("To meet the

---

[4] In their motions to dismiss, the Defendants reasonably construe the Plaintiff's Third Amended Complaint as asserting only claims under these specified statutes, with factual allegations in the attached EEOC letter serving as support for those enumerated claims. *See* Sukhu MTD at 6; UPS MTD at 5. The Court addresses the possibility that Plaintiff may be attempting to assert additional claims later in this memorandum. *See infra* II.B.3.

9

test for individual liability under ERISA, the Court must look first to whether the individual defendant qualifies as a 'controlling corporate official.'" (quoting *Cement & Concrete Workers Dist. Council Welfare Fund, Pension Fund, Legal Servs. Fund & Annuity Fund v. Lollo,* 35 F.3d 29, 32 (2d Cir. 1994)). As to the ADA claim, there is no individual liability against Ms. Sukhu in the circumstances of this case. *See Spiegel v. Schulmann,* 604 F.3d 72, 79 (2d Cir. 2010) ("Accordingly, it follows that, in the context of employment discrimination, the retaliation provision of the ADA, which explicitly borrows the remedies set forth in § 2000e–5, cannot provide for individual liability."); *Harris v. Mills,* 572 F.3d 66, 72 (2d Cir. 2009) (agreeing that individuals may be sued in their *official* capacity, but not in their individual capacities, under Title II of the ADA); *cf. Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn,* 280 F.3d 98, 107 (2d Cir. 2001) ("Insofar as Garcia is suing the individual defendants in their individual capacities, neither Title II of the ADA nor § 504 of the Rehabilitation Act provides for individual capacity suits against state officials."). In any case, there are no allegations in the Amended Complaint that Ms. Sukhu had any involvement in any discrimination against the Plaintiff on the basis of his alleged disability, diabetes. *See generally* Am. Compl.

Finally, "the ADEA precludes individual liability," *Cherry v. Toussaint,* 50 F. App'x 476, 477 (2d Cir. 2002) (summary order); *accord Ocasio v. Riverbay Corp.*, No. 06 Civ 6455 (PAC) (KNF), 2007 WL 1771770, at *7 (S.D.N.Y. June 19, 2007), and the OWBPA does not give rise to a cause of action separate from a violation of the ADEA, *see Presser v. Key Food Stores Co-op, Inc.,* No. 01 CV 8059 (ILG), 2002 WL 31946714, at *3 (E.D.N.Y. Dec. 3, 2002), *aff'd sub nom. Presser v. Key Food Stores Co-Op., Inc.,* 316 F. App'x 9 (2d Cir. 2009) (summary order). In any case, there are no allegations in

the EEOC letter tying Ms. Sukhu in any way to any decision to discriminate against Plaintiff on the basis of his age; indeed, as the Court notes below, there are no allegations in the Amended Complaint making it plausible that any Defendant discriminated against Plaintiff on the basis of his age. As to § 1983, there are no allegations in the Complaint that Sukhu acted under or conspired with an individual acting under color of state law. *See Gleason v. Scoppetta*, 566 F. App'x 65, 68 (2d Cir. 2014) (summary order) ("To state a claim under § 1983, a plaintiff [ (1) ] must allege the violation of a right secured by the Constitution and laws of the United States, and [ (2) ] must show that the alleged deprivation was committed by a person acting under color of state law." (quoting *West v. Atkins,* 487 U.S. 42, 48 (1988)).

The Plaintiff's Amended Complaint is therefore dismissed in its entirety against Ms. Sukhu. All claims specifically addressed herein are dismissed with prejudice.[5]

### 2. The UPS Defendants' Motion to Dismiss

The Court next addresses the UPS Defendants' motion to dismiss.

### a. Claims against the Individual Defendants

First, as to the individual Defendants, Mannion and Trandiak, the Plaintiff has not plausibly stated a claim on the basis of any of the statutes he cites, and all such claims must be dismissed with prejudice. As to FLSA, although Plaintiff alleges that Mannion was, at one point, Plaintiff's supervisor (and Trandiak, as a human resources manager, may have had some supervisory role over Plaintiff), the allegations in the Amended

---

[5] To the degree that the Plaintiff intends to bring suit against Ms. Sukhu for libel or defamation, *see* Dkt. No. 47 at 1-2, Judge Preska held in a previous case in which Plaintiff asserted such claims that there is no independent federal jurisdiction over such claims, *see Jiggetts*, No. 14-cv-7674, at 2, and as the Plaintiff has not stated any plausible federal claim in his Amended Complaint against Ms. Sukhu, the Court declines to exercise supplemental jurisdiction over any claims asserted.

Complaint do not come close to establishing that either individual was Plaintiff's "employer" for purposes of FLSA. *See Irizarry*, 722 F.3d at 104–05 (describing the "four factors [the Court looks to] to determine the 'economic reality' of an employment relationship: 'whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records'" (quoting *Barfield v. N.Y.C. Health and Hosps. Corp.*, 537 F.3d 132, 142 (2d Cir. 2008)). There are similarly no allegations sufficient to create individual ERISA liability. *See Metal Lathers Local 46 Pension Fund*, 954 F. Supp. 2d at 261. As already noted above, there is no individual liability on the ADA claims under the circumstances of this case, *see Spiegel*, 604 F.3d at 79; *Harris*, 572 F.3d at 72; *Garcia*, 280 F.3d at 107, nor on the ADEA claims, *Cherry*, 50 F. App'x at 477. Finally, as already noted, there are no allegations that any of the Defendants acted under color of state law or conspired with anyone who did so, for purposes of a § 1983 claim. *See Gleason*, 566 F. App'x at 68. Thus, the Amended Complaint fails to state a claim under any of the enumerated statutes against Mannion or Trandiak.

### b. Claims against UPS

The Court further concludes that the Amended Complaint fails to state claims on the basis of the enumerated statutes against UPS.

### i. FLSA

First, as to any FLSA claims, the Court dismisses such claims in their entirety with prejudice. There are no plausible, and decipherable, allegations in the EEOC letter that in any way suggest that the Plaintiff was not paid the relevant minimum wage, was

12

required to work overtime without appropriate compensation, or was retaliated against for complaining of FLSA violations. *See* 29 U.S.C. § 206 (governing minimum wage claims); 29 U.S.C. § 207 (governing maximum hours claims); 29 U.S.C. § 218c (governing retaliation claims). To the extent that the Plaintiff intends, in some way, to bring a FLSA claim, then, such a claim is either conclusory or indecipherable. *See Simmons*, 49 F.3d at 86.

### ii. ERISA

As to ERISA, the Court agrees with the UPS Defendants that it is not obvious what specific claim Plaintiff purports to bring, and Plaintiff makes no attempt to provide any clarity in his Amended Complaint or opposition brief. *See generally* Dkt. No. 60 (hereafter "Opposition").

To the degree Plaintiff is attempting to assert that he was discharged in 2013 in order to prevent the timely vesting of his pension benefits, such a claim is not plausibly stated. *See* Am. Compl. at 34 (alleging that the Plaintiff had "only . . . 3 years before [he] was eligible to retire and receive [his] pension and benefits" and that UPS terminated him to "save on paying [his] pension and benefits for 10 years"). Under ERISA, a party may bring a claim alleging he was wrongfully terminated in order to prevent him from attaining a benefit to which he would otherwise be entitled. *See Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 143 (1990) ("By its terms § 510 protects plan participants from termination motivated by an employer's desire to prevent a pension from vesting."); *see also* 29 U.S.C. § 1140 ("It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit

13

plan . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan . . . ."). However, such a claim requires showing a "causal nexus between the employee's imminent exercise of these workers' compensation rights and the basis for the employer's treatment of the employee." *Sandberg v. KPMG Peat Marwick, L.L.P.,* 111 F.3d 331, 336 (2d Cir. 1997) (internal quotation marks omitted). Plaintiff makes a single conclusory allegation that he was fired, three years before his pension benefits would vest, *in order* to prevent them from vesting. Am. Compl. at 34. Not only is this single allegation of motive insufficient to state a claim, but it is undermined by the entirety of Plaintiff's EEOC letter, which alleges that the UPS Defendants discriminated against the Plaintiff on the basis of race and retaliated against him on the basis of specific complaints against them. Although the *effect* of a wrongful termination on the basis of a protected characteristic such as race may be that certain pension benefits do not vest, such termination does not state a claim under ERISA unless it is motivated by a desire to unlawfully prevent those benefits from vesting. *See Sandberg*, 111 F.3d at 335 (distinguishing between ERISA claims alleging termination because of the imminent vesting of pension benefits, and claims alleging discrimination on the basis of protected characteristics); *cf. Wright v. Gen. Motors Corp.*, 262 F.3d 610, 615 (6th Cir. 2001) (finding, for purposes of a pre-emption analysis, that the plaintiff's claim was "not a lawsuit claiming wrongful withholding of ERISA covered plan benefits[, but] a lawsuit claiming race and sex discrimination and retaliation resulting in damages, one component of which is a sum owed under the provision of the [benefits] plan"). Thus, any such claim for wrongful termination under ERISA is dismissed with prejudice.

The Plaintiff also asserts that, after he was terminated, he "had to pay $500/month for COBRA coverage." Am. Compl. at 33. He further alleges that "[UPS] cashed some of the checks that [Plaintiff] sent in and some they did not cash." *Id.* "As a result[, Plaintiff's] benefit coverage was terminated and [he] . . . went almost a month without insulin until [he] received Medicaid." *Id.* The Plaintiff makes no specific reference to these facts in his opposition brief, and, in that brief, does not cite ERISA at all, but simply the OWBPA. *See* Opp. at 1. Nevertheless, to the degree that the Plaintiff intends to assert, through these vague allegations, a claim that UPS "unlawfully terminated his COBRA coverage," he has failed to provide sufficient factual allegations to plausibly state such a claim. *Chaganti v. Ceridian Benefits*, No. C 03-05785 (CRB), 2004 WL 1877733, at *6 (N.D. Cal. Aug. 23, 2004), *aff'd sub nom. Chaganti v. Ceridian Benefits Servs., Inc.*, 208 F. App'x 541 (9th Cir. 2006) (mem. dispo.).

### c. ADA

The Court next addresses the Plaintiff's purported ADA claims. The UPS Defendants interpret the Plaintiff to be alleging that he was terminated because of an actual or perceived disability – his diabetes. *See* UPS MTD at 10-11. A Plaintiff may "establish a prima facie case under the ADA" for employment discrimination if he alleges "(1) his employer is subject to the ADA; (2) he was disabled within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) he suffered adverse employment action because of his disability." *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006) (quoting *Giordano v. City of New York,* 274 F.3d 740, 747 (2d Cir. 2001)). The Defendants do not dispute the first, second, or third prongs of the test, but simply

15

dispute that Plaintiff has plausibly alleged that he was terminated because of his disability. UPS MTD at 11.

As an initial matter, the Court notes that it is not evident that the Plaintiff is even alleging that the UPS Defendants' choice to terminate him on the basis of Sukhu's complaint – which Plaintiff alleges they used as a pretext – was motivated by animus as a result of his disability. No such allegation clearly appears in the EEOC letter. *See* Am. Compl. 26-35. To the extent that the Plaintiff is attempting to bring such a claim, it is dismissed with prejudice as insufficiently pled.

On the other hand, the Plaintiff may also be making a reasonable accommodation claim under the ADA, which the UPS Defendants do not address. *See* Am. Compl. at 27 (alleging that, in 2004, Plaintiff was forced to work nights despite his diabetes making such a schedule burdensome); *id.* at 28 (alleging that in 2010, he was again forced to work nights until the human resources department intervened); *id.* at 29-30 (stating that, at some unspecified time after 2011 but before August 2013, Jim Fitzgerald again made Plaintiff work nights). To the extent Plaintiff is attempting to bring such a claim, it is neither plausibly nor decipherably pled. It is dismissed without prejudice, and with leave to amend.

### d. The OWBPA and the ADEA

Finally, the Plaintiff purports to bring claims under the OWBPA and the ADEA. Under the ADEA, "a plaintiff bringing a disparate-treatment claim . . . must prove, by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 180 (2009). The Court agrees with the UPS Defendants that the Plaintiff has made no allegations of age

16

discrimination anywhere in his Amended Complaint. Any claims based on these statutes are dismissed with prejudice.

### 3. Other Claims

As noted, the Defendants, in their motions to dismiss, make arguments only as to the specific statutes Plaintiff himself cites in his Amended Complaint, reasonably construing the Plaintiff as asserting claims only under those statutes. To the extent that the Plaintiff intends to raise additional, but unidentified claims based on allegations in his attached EEOC letter (allegations that may simply be intended as support for the claims the Plaintiff affirmatively brings in the body of his actual complaint), such claims are dismissed as insufficiently pled under Federal Rules of Civil Procedure 12(b)(6), 12(e), and 8(a), without prejudice to the Plaintiff identifying them via amendment.

### III.   Conclusion

Plaintiff has been given multiple opportunities to replead his claims and yet he still fails to plausibly, and clearly, allege any claim under the statutes enumerated in his Amended Complaint against any of the Defendants. Thus, the Court dismisses the Amended Complaint. Unless otherwise noted, all claims discussed in this opinion are dismissed with prejudice, meaning Plaintiff may not make further attempts to replead those claims.

Should the Plaintiff seek to amend his complaint to add any additional claims not dismissed with prejudice in this Order, he must do so on or before April 17, 2017. This will constitute the Plaintiff's final opportunity to replead as to any claims not dismissed with prejudice. Failure to plausibly or decipherably plead such claims will result in

dismissal without further opportunity to replead. Further, Plaintiff is hereby advised that any new amended complaint will *completely replace* the Second Amended Complaint. Accordingly, if Plaintiff files an amended complaint, it should include all of the information he believes is necessary to make a short, plain statement explaining why he is entitled to relief against any Defendant as to any claim the Court does not dismiss with prejudice in this Order.

SO ORDERED

Dated: March 27, 2017
       New York, New York

_____
ALISON J. NATHAN
United States District Judge